CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 19 2012

JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ARMET ARMORED VEHICLES, INC.<br>WILLIAM R. WHYTE | Criminal No. 4:12-cr-00021<br><br>In Violation Of:<br>18 U.S.C. §§ 1031, 1343, and 287 |

## INDICTMENT

The Grand Jury Charges:

## INTRODUCTION

At times material to this Indictment:

### A.   The Defendants

1. Defendant ARMET ARMORED VEHICLES, INC. ("ARMET") is a business that manufactures and supplies armored vehicles for government and commercial customers. ARMET operates or has operated out of offices in Danville, Virginia; Largo, Florida; and Ontario, Canada.

2. Defendant WILLIAM R. WHYTE ("WHYTE") was the owner and chief executive officer of ARMET. WHYTE personally managed and supervised all the operations of ARMET.

### B.   The Contracts

3. After the United States entered Iraq in March 2003, the Department of Defense conducted most of its contracting for that operation through the United States Joint Contracting Command in Baghdad, Iraq ("JCCI").

4. On or about April 17, 2006, the JCCI issued a solicitation of work to acquire 24 armored gun trucks for use by personal-security detail teams to protect Iraqi officials.

5. On or about April 21, 2006, WHYTE and ARMET responded to the solicitation with ARMET Quote #PAF-2180-24-4.

6. On or about April 25, 2006, the JCCI awarded a contract to ARMET, Order Number W91GY0-06-F-0028 ("the 0028 Contract"), for the 24 armored gun trucks in the amount of $4,779,693.36. Under the 0028 Contract, ARMET was to deliver four armored gun trucks to Iraq within 45 days of the contract award and the remaining 20 trucks by July 31, 2006. The 0028 Contract called for payment per vehicle of approximately $199,000.

7. On or about June 1, 2006, the JCCI issued a second solicitation of work to build eight additional armored gun trucks.

8. On or about June 8, 2006, WHYTE and ARMET responded to the second solicitation with ARMET Quote #PAF-3042-8-1.

9. On or about June 18, 2006, the JCCI awarded a second contract to ARMET, Order Number W91GY0-06-F-0047 ("the 0047 Contract"), for the eight additional armored gun trucks in the amount of $1,593,231.10. Under the 0047 Contract, ARMET was to deliver the eight armored gun trucks to Iraq within 90 days of the contract award for payment of approximately $199,000 per vehicle.

### C. The Armoring Specifications for the Vehicles

10. Both the 0028 Contract and the 0047 Contract (hereafter, the "Contracts") stated that the armored gun trucks would provide security to Iraqi "VIPs," who regularly traveled by motorcade through "a hostile and dangerous environment." Both contracts set out specific requirements for the armoring and protective features of the vehicles.

11. The Contracts required that each armored gun truck be "armor-protected with a minimum of Central European Norm (EU) B7 protection," a standard at which armor-piercing bullets of a given caliber and velocity will not penetrate the armor. The Contracts required this level of ballistic protection for a number of areas, including the passenger compartment and ceiling.

12. The Contracts required that the undercarriage of each armored gun truck have armored mine plating protection and that "[a]t a minimum, the protection level acceptable shall withstand blast underneath the vehicle from grenades and/or blasts of whatever nature equivalent to the strength of two DM51 German ordinance."

13. The Contracts required that the armored gun trucks have run-flat tires, plus one spare, so that the armored gun trucks could continue to operate even if their tires had been shot or otherwise flattened.

### D. Contract Deliveries and Termination

14. Despite the requirement in the 0028 Contract that all 24 armored gun trucks be delivered by July 31, 2006, WHYTE and ARMET failed to ship a single armored gun truck by that deadline. WHYTE and ARMET shipped the first and second armored gun trucks for the 0028 Contract to Iraq on or about August 12, 2006, and the third and fourth armored gun trucks on or about October 17, 2006.

15. Upon the delivery of each armored gun truck, defendants WHYTE and ARMET submitted to the JCCI a "Material Inspection and Receiving Report," called a Form DD-250, and an invoice. WHYTE and ARMET prepared these forms for submission to the JCCI in their offices, including their office in Danville, Virginia.

16. The United States paid those charges of approximately $199,000 per vehicle through the JCCI and the U.S. Army Corps of Engineers ("USACE") Finance Center in Millington, Tennessee.

17. On or about November 1, 2006, WHYTE and ARMET, citing cash-flow problems, submitted a Form DD-250 and a Contractor's Request for Progress Payment, Form 1443, to the JCCI seeking an advance or progress payment of $1 million from the United States. WHYTE and ARMET told the JCCI that they needed these funds to continue to produce the armored gun trucks under the two Contracts with the JCCI. On or about December 6, 2006, the JCCI approved a progress payment of $824,531 for ARMET and wired that amount to ARMET's bank account.

18. Despite receiving that progress payment, between December 2006 and January 2008, WHYTE and ARMET delivered and billed for only three additional armored gun trucks as follows:

    a. On or about February 9, 2007 and September 21, 2007, WHYTE and ARMET delivered and billed for the fifth and sixth armored gun trucks. The JCCI accepted these two armored gun trucks and paid WHYTE and ARMET over $398,000.

    b. On or about January 1, 2008, WHYTE and ARMET delivered and billed for a seventh armored gun truck. The JCCI did not accept or pay for that armored gun truck.

19. On or about February 11, 2008, the JCCI issued a "Show Cause Notice" to WHYTE and ARMET notifying them that ARMET was in breach of the 0028 Contract for failure to make the deliveries ARMET had promised. ARMET attempted to terminate or renegotiate the Contracts on approximately March 9, 2008, and the JCCI then terminated the Contracts on March 24-26, 2008.

20. Of the 32 armored gun trucks that WHYTE and ARMET agreed to deliver under the Contracts, WHYTE and ARMET delivered only seven, six of which JCCI accepted. In all, defendants WHYTE and ARMET billed $1,194,923.36 for those six vehicles and received a total of $2,019,454.36 in federal funds from the JCCI, including the December 2006 progress payment.

### E. Defective Vehicles

21. None of the six armored gun trucks ARMET and WHYTE delivered to the government met the ballistic and blast protection requirements of the Contracts. Specifically, none of the armored gun trucks satisfied the B7 ballistic protection standard, and none of the armored gun trucks had sufficient blast protection to withstand the detonation of two German DM51 ordinance.

22. At least the first five armored gun trucks ARMET and WHYTE delivered did not have run-flat tires.

### F. Fraudulent Contract Billings and Certifications, and the Resulting Payments

23. In each of their quotes to the JCCI, WHYTE and ARMET stated that ARMET's ballistic armoring was tested and that its armored gun trucks would meet the ballistic and blast protection standards the Contracts required. The quotes specifically promised B7 ballistic protection on the ceiling and stated, "The ceiling armor was tested to defeat three hits" of the requisite ordinance with "the target being placed at a 90-degree angle from the weapon." The quotes further promised, "The floor in this vehicles [sic] defeat [sic] the blast of two German DM51 or two US M67 anti-personnel grenades." In addition, WHYTE and ARMET asserted that the proprietary blast material they intended to use, which they called Thika Mineplate, "with a layered thickness of 12 mm ... will defeat 600 grams of C4 or SEMTEX (RDX & PETN) plastic explosive at a

point blank range." ARMET further promised to provide run flat tires for each armored gun trucks.

24. WHYTE and ARMET knew that each of the seven armored gun trucks that they delivered to the JCCI failed to meet the ballistic and blast protection requirements of the Contracts and that at least the first five armored gun trucks lacked run-flat tires as required in the Contracts.

25. Defendants WHYTE and ARMET knew that their billings to the JCCI were false and fraudulent because the armored gun trucks that they shipped did not comply with the ballistic and blast protection requirements of the Contracts and did not have run-flat tires.

26. Defendants WHYTE and ARMET obtained the December 2006 advance progress payment of $824,531.00 based on WHYTE's and ARMET's representations that they needed the funds to produce the armored gun trucks under the Contracts. Instead of using those funds to build and ship more armored gun trucks, however, WHYTE and ARMET intentionally diverted the funds to other business and personal expenditures.

27. Defendants WHYTE and ARMET knew that all of the armored gun trucks they had provided were defective and would not protect the officials that they were intended to protect, and that in so doing they were consciously or recklessly risking serious personal injury to the occupants of those armored gun trucks.

## MAJOR FRAUD AGAINST THE UNITED STATES
## COUNTS 1 THROUGH 3
## (18 U.S.C. § 1031)

28. The Grand Jury realleges and incorporates by reference paragraphs 1 through 27 of the Indictment.

### THE SCHEME AND ARTIFICE

29. From on or about April 21, 2006 through on or about March 31, 2008, defendants ARMET and WHYTE devised a scheme and artifice to defraud the United States, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, in procurements of armored gun trucks as a prime contractor with the United States in which the value of the contracts with the United States was $1 million or more.

### PURPOSE OF THE SCHEME AND ARTIFICE

30. It was the purpose of the scheme and artifice for defendants ARMET and WHYTE to enrich themselves by billing for armored gun trucks they provided to the United States, knowing that the armored gun trucks lacked the protective measures the Contracts required and that these armored gun trucks would deploy to "a hostile and dangerous environment."

### MANNER AND MEANS

31. As part of the scheme, defendants ARMET and WHYTE promised to deliver armored gun trucks which met the contractual requirements for protective measures specified in the Contracts and then delivered and billed the United States for these armored gun trucks, knowing that the armored gun trucks did not have the required protective measures.

32. It was a part of the scheme that defendants ARMET and WHYTE did not use the December 2006 progress payment to complete their obligations under the Contracts and instead diverted these federal funds to other business and personal uses.

33. It was a further part of the scheme that defendants ARMET and WHYTE chose to under-armor portions of the armored gun trucks where the defects would not be readily apparent.

## EXECUTION OF THE SCHEME AND ARTIFICE

34. On or about each of the date ranges set forth below, each constituting a separate count of this Indictment, in the Western District of Virginia and elsewhere, defendants ARMET and WHYTE knowingly executed, and attempted to execute, and caused the execution of the scheme and artifice described in this Indictment, with the intent to defraud the United States and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, in procurements of property and services as a prime contractor with the United States, where the value of each of the contracts for that property and service was $1 million or more, where the gross loss to the United States was $500,000 or greater and the gross gain to themselves was $500,000 or greater, and where the offense involved a conscious and reckless risk of serious personal injury, as follows:

| COUNT | DATES | ACT EXECUTING THE FRAUDULENT SCHEME |
|---|---|---|
| One | 10/17/06 - 11/8/06 | Defendants' submission to the JCCI of DD-250 and Invoice # 10379 Seeking Payment for Two Defective Armored Gun Trucks |
| Two | 11/1/06 - 12/6/06 | Defendants' submission to the JCCI of DD-250, Invoice # 10383 and SF-1443 for $824,531.00 Progress Payment |
| Three | 2/9/07 - 6/22/07 | Defendants' submission to the JCCI of DD-250 and Invoice # 10387 Seeking Payment for One Defective Armored Gun Truck |

All in violation of Title 18, United States Code, Sections 1031(a) and 1031(b).

# WIRE FRAUD
## COUNTS 4 THROUGH 10
### 18 U.S.C. § 1343

35. The Grand Jury realleges and incorporates by reference paragraphs 1 through 27 of the Indictment.

## THE SCHEME AND ARTIFICE

36. From on or about April 21, 2006 through on or about March 31, 2008, defendants ARMET and WHYTE devised and intended to devise a scheme and artifice to defraud the United States and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

## PURPOSE OF THE SCHEME AND ARTIFICE

37. It was the purpose of the scheme and artifice for defendants ARMET and WHYTE to enrich themselves by billing for armored gun trucks provided to the United States, knowing that the armored gun trucks lacked the protective measures the Contracts required and that these armored gun trucks would deploy to "a hostile and dangerous environment."

## MANNER AND MEANS

38. As part of the scheme, defendants ARMET and WHYTE promised to deliver armored gun trucks which met the contractual requirements for protective measures specified in the Contracts and then delivered and billed the United States for these armored gun trucks, knowing that the armored gun trucks did not have the required protective measures.

39. It was a part of the scheme that defendants ARMET and WHYTE did not use the December 2006 progress payment to complete their obligations under the Contracts and instead diverted these federal funds to other business and personal uses.

40. It was a further part of the scheme that defendants ARMET and WHYTE chose to under-armor portions of the armored gun trucks where the defects would not be readily apparent.

## EXECUTION OF THE SCHEME AND ARTIFICE

41. Defendants ARMET and WHYTE used interstate and international wire transmissions, including emails, faxes, and telephone calls to and from Danville, Virginia, to create their forms and invoices for submission to JCCI officials in Iraq and to the USACE Finance Center in Tennessee.

42. Defendants ARMET and WHYTE used interstate and international wire transmissions, including emails, faxes, and telephone calls, to answer inquiries from JCCI and to report to JCCI on ARMET's supposed progress in delivering armored gun trucks to lull the JCCI into believing that ARMET and WHYTE would properly perform on the Contracts.

43. The JCCI in Iraq used international wire transmissions to communicate about the contracts and billings with ARMET, WHYTE, and the USACE Finance Center in Tennessee.

44. The JCCI subsequently paid defendants ARMET and WHYTE by interstate electronic transfer of funds from the United States Treasury to ARMET's bank account in Florida.

45. On or about each of the dates or date ranges set forth below, in the Western District of Virginia and elsewhere, defendants ARMET and WHYTE, having knowingly devised and intended to devise the scheme and artifice to defraud the United States, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, as described in this Indictment, transmitted and caused to be transmitted by wire communication in interstate and foreign commerce the following writings, signs, signals, and pictures, all for the purpose of executing this scheme and artifice, each transmission constituting a separate count of this Indictment, as follows:

| COUNT | DATE | WIRE TRANSMISSION |
|-------|------|-------------------|
| Four | 10/17/06 – 11/8/06 | Email Transmission from Armet President in the Western District of Virginia to JCCI in Baghdad, Iraq, Requesting Payment on DD-250 and Invoice # 10379 for Two Armored Gun Trucks |
| Five | 11/1/06 – 12/6/06 | Email Transmission from Armet President in the Western District of Virginia to JCCI in Baghdad, Iraq of DD-250, Invoice # 10383 and SF-1443 for $824,531.00 Progress Payment |
| Six | 3/25/07 | Email from Armet President in the Western District of Virginia Informing JCCI in Baghdad, Iraq, that Armet President Would Be Ensuring Compliance with Whyte's New Delivery Schedule |
| Seven | 2/9/07 – 6/22/07 | Email from Armet President in the Western District of Virginia to JCCI in Baghdad, Iraq, Requesting Payment on DD-250 and Invoice # 10387 for One Armored Gun Truck |
| Eight | 5/5/07 | Email from Armet President in the Western District of Virginia to JCCI in Baghdad, Iraq, and William Whyte in Ontario, Canada, Requesting Inspector Verification and Processing of DD-250 for One Armored Gun Truck |
| Nine | 8/2/07 | Email from Armet Managing Director in the Western District of Virginia to JCCI in Baghdad, Iraq, and William Whyte in Ontario, Canada, Answering Contract-Modification Request and Announcing Shipment of One Armored Gun Truck |

All in violation of Title 18, United States Code, Section 1343.

### FALSE, FICTITIOUS, AND FRAUDULENT CLAIMS
### COUNTS 10 THROUGH 12
### 18 U.S.C. § 287

46.  The Grand Jury realleges and incorporates by reference paragraphs 1 through 27 of the Indictment.

47.  On or about each of the date ranges listed below in the Western District of Virginia and elsewhere, defendants ARMET and WHYTE willfully made and presented and caused to be presented to the JCCI the following claims upon and against the United States Department of

Defense, a department of the United States, knowing that those claims were materially false, fictitious, and fraudulent in that the armored gun truck deliveries evidenced by the DD-250 forms and the armored gun trucks to be produced using the progress payment did not meet the contract specifications and therefore were not eligible for payment under the Contracts, as follows:

| COUNT | DATE | FALSE CLAIM |
|---|---|---|
| Ten | 10/17/06 – 11/8/06 | Defendants' Submission to JCCI for Payment on DD-250 and Invoice # 10379 for Two Armored Gun Trucks |
| Eleven | 11/1/06 – 12/6/06 | Defendants' Submission to JCCI of DD-250, Invoice # 10383 and SF-1443 Requesting $824,531.00 Progress Payment |
| Twelve | 2/9/07 – 6/22/07 | Defendants' Submission to JCCI for Payment on DD-250 and Invoice # 10387 for One Armored Gun Truck |

All in violation of Title 18, United States Code, Section 287.

## NOTICE OF FORFEITURE

48. Upon conviction of one or more of the felony offenses alleged in Counts 4 – 9 in this Indictment, defendants shall forfeit to the United States:

   a. any property, real or personal, which constitutes or is derived from proceeds traceable to said offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

   b. any property, real or personal, involved in said offenses, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

49. The property to be forfeited to the United States includes but is not limited to the following property:

   ### a. Money Judgment

   Not less than $2,019,434.36 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate was obtained directly or indirectly as a result of said offenses or is traceable to such property.

50. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

A TRUE BILL, this <u>19</u> day of July, 2012.

*/s/ James R. Jarvis*
FOREPERSON

TIMOTHY J. HEAPHY
UNITED STATES ATTORNEY

*/s/ Stephen J. Pfleger*
STEPHEN J. PFLEGER
Assistant United States Attorney
301 First Street SW, Room 906
Roanoke, VA 24011
Telephone:   (540) 857-2250
Facsimile:   (540) 857-2614
E-mail: stephen.pfleger@usdoj.gov

DENIS J. McINERNY
CHIEF, FRAUD SECTION
UNITED STATES DEPARTMENT OF JUSTICE

*/s/ Catherine Votaw/SSP*
CATHERINE VOTAW
Trial Attorney
Fraud Section, Criminal Division
1400 New York Avenue NW, 11th Floor
Washington, DC 20530
Telephone:   (202) 307-0449
Facsimile:   (202) 514-7021
E-mail: cathy.votaw2@usdoj.gov